**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| BESTERGO INC., | C.A. No. **25-7157** |
| Plaintiffs, | |
| v. | JURY TRIAL DEMANDED |
| CKNAPP SALES, INC. | |
| Defendant. | |

**COMPLAINT FOR DECLARATORY JUDGMENT**

BESTERGO Inc. ("Bestergo" or "Plaintiff") files this Complaint for Declaratory Judgment against CKnapp Sales, Inc. ("CKnapp" or "Defendant") and alleges as follows:

**NATURE OF THE ACTION**

1.     This is an action for a declaratory judgment of noninfringement arising under the patent laws of the United States, Title 35 of the United States Code.

2.     CKnapp purports to be the owner of U.S. Patent No. 12,318,003 (the "'003 Patent" or "Patent-at-Issue") (attached as Exhibit A).

3.     CKnapp's actions and statements, including its allegations of infringement of the '0003 Patent by Plaintiff as detailed below, have created a real and substantial controversy that warrants issuance of a declaratory judgment of noninfringement by Plaintiff of the '003 Patent.

**JURISDICTION AND VENUE**

4.     The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a) because this action involves claims arising under the patent laws of the

United States, 35 U.S.C. § 1, et seq., and under the Federal Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202.

5.      Personal jurisdiction is proper in this Court at least because CKnapp's actions have affected Plaintiff's ability to sell its products to consumers in this District, and CKnapp thus had fair warning that it may be hauled into court here.  Further, on information and belief, CKnapp has sent letters to Amazon.com from this district, charging Plaintiff with infringing CKnapp's U.S. patents, and seeking to interfere with Plaintiff's attempts to market its products into the United States, including this District.

6.      Venue is proper in this Court pursuant to 28 U.S.C. §§ 1391(b) and 1391(c)(2) because a substantial part of the events giving rise to the claims occurred in this District and because Defendant is subject to personal jurisdiction in this District.  Venue is proper over CKnapp because it has a physical address in this District.

7.      For the reasons set forth below, a substantial controversy exists between the parties which is of sufficient immediacy and reality to warrant declaratory relief.

## BACKGROUND

8.      Plaintiff is a corporation with its place of business at 9501 Louisiana Avenue, Suite 200, Brooklyn Park, MN 55445.

9.      On information and belief, Defendant is a corporation with a principal place of business at 195 E Martin Dr, Goodfield, IL 61742.

10.     Until recently, Plaintiff has sold adjustable standing desks through Amazon.com under ASINs B0D9LZC7MB and B0D9LZV2N7 (collectively "Products-at-Issue), all of which have the same overall structure.

11.    The '003 patent is entitled "DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY." The '003 Patent bears the issuance and publication date of June 3, 2025.

12.    On information and belief, sometime prior to June 12, 2025, acting through its attorney, Ryan N. Phelan, an attorney of the Chicago law firm, Marshall Gerstein, Defendant sent communications to Amazon.com claiming that the Products-at-Issue infringes claim 20 of the '003 patent and requesting that Amazon.com remove the ASIN listings for the Products-at-Issue through Amazon Patent Evaluation Express Program (APEX).

13.    On or about June 12, 2025, Plaintiff received an email from Amazon.com stating that it had received a complaint from Defendant claiming that the Products-at-Issue infringe claim 20 of the '003 Patent. (A copy of the email is attached as Exhibit B.) The Amazon.com email stated that Amazon.com would remove listings for the Products-at-Issue unless, *inter alia*, Plaintiff contacts Defendant to resolve the dispute or files an action for declaratory judgment of non-infringement of the '003 Patent within three weeks.

14.    Removal of the Amazon.com listings for the Products-at-Issue threatens to cause substantial harm to Plaintiff's business selling the Products-at-Issue. A substantial share of the Products-at-Issue's sales are made through orders received on Amazon.com.

## COUNT I: DECLARATION OF NONINFRINGEMENT

15.    Plaintiff repeats and realleges the allegations in paragraphs 1–14 as though fully set forth herein.

16.    Plaintiff has not infringed and does not infringe, directly or indirectly, claim 20 of the '003 Patent.

17.    Independent claim 20 of the '003 Patent recites:

20. A desktop workspace that adjusts vertically, comprising:
        a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a set of pivot arms;

a base pivot point fixed relative to the base connecting the set of pivot arms to the base; and

a platform pivot point fixed relative to the work surface platform and connecting the set of pivot arms,

wherein the set of pivot arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base; and

a gas spring attached between the work surface platform and a point of the base to provide a force to assist in elevation of the work surface platform,

wherein the gas spring extends between the work surface platform and the point of the base,

wherein the gas spring acts as a locking device that holds the work surface platform at various vertical heights above the base.

18. Products-at-Issue do not comprise at least "a platform pivot point fixed relative to the work surface platform and connecting the set of pivot arms" and/or "a height adjustment mechanism" as properly construed in independent claim 20 as described in the specification and shown in the drawings of the '003 Patent.

19. Plaintiff is entitled to a declaratory judgment that it has not infringed and is not infringing the '003 Patent.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that judgment be entered:

a.       Declaring that Plaintiff has not and does not infringe, directly, contributorily, by inducement, literally or by equivalents, jointly, or willfully, the '003 Patent by making, using, selling, offering to sell, and/or importing the Products-at-Issue;

b.       Declaring that the Products-at-Issue do not infringe, directly, contributorily, by inducement, literally or by equivalents, jointly, or willfully, the '003 Patent;

c.       Award Plaintiff a permanent injunction enjoining Defendant and those in privity with Defendant from asserting the '003 Patent against the Products-at-Issue;

d.       If the facts demonstrate that the case is exceptional within the meaning of 35 U.S.C. § 285, an award to Plaintiff of its reasonable attorneys' fees, expenses, and costs associated with this action; and

e.       Awarding Plaintiff any other remedy or relief to which it may be entitled and which the Court deems just, proper, and equitable.

**DEMAND FOR JURY TRIAL**

Plaintiff requests a trial by jury under Rule 38 of the Federal Rules of Civil Procedure of all issues that may be determined by a jury.

Dated:  June 26, 2025                    Respectfully submitted,

                                         /s/ Eric Cohen____
                                         Eric Cohen
                                         RIMON P.C.
                                         875 N. Michigan Ave., Suite 3100
                                         Chicago, IL 60611
                                         (312) 224-0966
                                         eric.cohen@rimonlaw.com

                                         Jason Xu
                                         1050 Connecticut Ave. NW, Suite 500
                                         Washington, D.C. 20036
                                         (202) 470-2141
                                         jason.xu@rimonlaw.com

                                         John E. Handy (*pro hac vice* application
                                         forthcoming)
                                         1765 Greensboro Station Place Tower I,
                                         Suite 900
                                         McLean, VA 22102
                                         Telephone/Facsimile: (703) 559-7360
                                         john.handy@rimonlaw.com

                                         *Attorneys for Plaintiff*

# EXHIBIT A

US012318003B1

(12) **United States Patent**　(10) **Patent No.:　US 12,318,003 B1**
Poniatowski　(45) **Date of Patent:　*Jun. 3, 2025**

(54) **DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY**

(71) Applicant: **Office Kick, Inc.**, Boulder, CO (US)

(72) Inventor: **Nathan Mark Poniatowski**, St. Petersburg, FL (US)

(73) Assignee: **Office Kick, Inc.**, Boulder, CO (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 0 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **18/930,950**

(22) Filed: **Oct. 29, 2024**

**Related U.S. Application Data**

(60) Continuation of application No. 18/481,082, filed on Oct. 4, 2023, now Pat. No. 12,256,842, which is a
(Continued)

(51) **Int. Cl.**
　*A47B 9/16*　(2006.01)
　*A47B 21/02*　(2006.01)
　(Continued)

(52) **U.S. Cl.**
　CPC ............... *A47B 9/16* (2013.01); *A47B 21/02* (2013.01); *A47B 21/0314* (2013.01); *A47B 21/04* (2013.01); *A47B 2021/0335* (2013.01)

(58) **Field of Classification Search**
　CPC ....... A47B 1/03; A47B 21/0314; A47B 21/00; A47B 21/02; A47B 21/03; A47B 21/04; A47B 9/16; A47B 2021/0321; A47B

2021/0364; A47B 2021/0335; A47B 3/00; A47B 61/00; A47B 3/02; A47B 3/0809; A47B 3/0815; A47B 2003/025
(Continued)

(56) **References Cited**

U.S. PATENT DOCUMENTS

200,057 A　2/1878　Hart
317,468 A　5/1885　Morstatt
(Continued)

FOREIGN PATENT DOCUMENTS

AU　5691386 A　11/1986
AU　580874 B2　2/1989
(Continued)

OTHER PUBLICATIONS

"Easylift Gas Springs: Technical Information," Web page, Aug. 24, 2008, retrieved from Internet Archive Wayback Machine on Aug. 29, 2022.
(Continued)

*Primary Examiner* — Janet M Wilkens
(74) *Attorney, Agent, or Firm* — Lund IP, PLLC

(57)　**ABSTRACT**

A desktop workspace that adjusts vertically includes a work surface platform, a base configured to sit on an existing platform, such as a desk, a height adjustable mechanism including at least one set of arms that connect at a pivot point(s) creating a scissoring motion to raise and lower the said work surface platform to various heights. A locking and unlocking mechanism may connect to the height adjustable mechanism. In some cases, the apparatus includes an adjustable mechanism to support items such as a keyboard. In some cases, the apparatus includes elements to raise items such as a monitor to an additional height.

**30 Claims, 29 Drawing Sheets**



## US 12,318,003 B1

Page 2

### Related U.S. Application Data

continuation of application No. 17/985,137, filed on Nov. 10, 2022, now Pat. No. 11,910,926, which is a continuation of application No. 17/493,812, filed on Oct. 4, 2021, now Pat. No. 11,944,159, which is a continuation of application No. 16/785,647, filed on Feb. 9, 2020, now Pat. No. 11,134,773, which is a continuation of application No. 16/372,334, filed on Apr. 1, 2019, now Pat. No. 10,575,630, which is a division of application No. 15/628,558, filed on Jun. 20, 2017, now Pat. No. 10,244,861, which is a division of application No. 15/004,926, filed on Jan. 23, 2016, now abandoned.

(60) Provisional application No. 62/107,380, filed on Jan. 24, 2015.

(51) **Int. Cl.**
   *A47B 21/03* (2006.01)
   *A47B 21/04* (2006.01)

(58) **Field of Classification Search**
   USPC .......... 312/208.1, 223.3; 248/421, 562, 588, 248/585, 431, 432, 439; 108/147, 144.11, 108/145, 93, 96, 116–118, 120, 43, 138, 108/50.01, 50.02, 28
   See application file for complete search history.

(56) **References Cited**

#### U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 606,845 A | 7/1898 | Simmons |
| 835,247 A | 11/1906 | Morgan |
| 1,217,772 A | 2/1917 | Kade |
| 1,318,564 A | 10/1919 | Jenkins |
| 2,225,243 A | 12/1940 | Zottel |
| 2,260,695 A | 10/1941 | Self |
| 2,692,807 A | 10/1954 | Fred |
| 2,843,418 A | 7/1958 | Gray |
| 2,916,340 A | 12/1959 | Jackson |
| 2,937,003 A | 5/1960 | Croll |
| 3,092,918 A | 6/1963 | Haeussermann et al. |
| 3,110,476 A | 11/1963 | Farris |
| 3,152,833 A | 10/1964 | Creveling et al. |
| 3,282,566 A | 11/1966 | Clarke |
| 3,295,800 A | 1/1967 | Karl-Erik et al. |
| 3,404,791 A | 10/1968 | Roy |
| 3,444,830 A | 5/1969 | Doetsch |
| 3,727,245 A | 4/1973 | Gerth |
| 3,823,915 A | 7/1974 | Koehler |
| 3,826,457 A | 7/1974 | De |
| 4,072,288 A | 2/1978 | Wirges et al. |
| 4,097,941 A | 7/1978 | Merkel |
| 4,221,280 A | 9/1980 | Richards |
| 4,249,749 A | 2/1981 | Collier |
| 4,382,573 A | 5/1983 | Aondetto |
| 4,403,680 A | 9/1983 | Hillesheimer |
| 4,433,759 A | 2/1984 | Ichinose |
| 4,448,386 A | 5/1984 | Moorhouse et al. |
| 4,449,262 A | 5/1984 | Jahsman et al. |
| 4,534,544 A | 8/1985 | Heide |
| 4,549,720 A | 10/1985 | Bergenwall |
| 4,558,648 A | 12/1985 | Franklin et al. |
| 4,558,847 A | 12/1985 | Coates |
| 4,574,785 A | 3/1986 | Yamamoto |
| 4,577,821 A | 3/1986 | Edmo et al. |
| 4,611,823 A | 9/1986 | Haas |
| 4,625,657 A | 12/1986 | Little et al. |
| 4,640,488 A | 2/1987 | Sakamoto |
| 4,659,052 A | 4/1987 | Nagata |
| 4,702,454 A | 10/1987 | Izumida |
| 4,709,972 A | 12/1987 | LaBudde et al. |
| 4,717,112 A | 1/1988 | Pirkle |
| 4,741,512 A | 5/1988 | Elkuch et al. |
| 4,753,419 A | 6/1988 | Johansson |
| 4,826,123 A | 5/1989 | Hannah et al. |
| 4,843,978 A | 7/1989 | Schmidt et al. |
| D302,893 S | 8/1989 | Wakefield |
| 4,899,987 A | 2/1990 | Craig |
| 4,909,159 A | 3/1990 | Gonsoulin |
| D308,537 S | 6/1990 | Clark |
| 4,941,641 A | 7/1990 | Granzow et al. |
| 4,967,672 A | 11/1990 | Leather |
| 4,995,130 A | 2/1991 | Hahn et al. |
| 5,037,163 A | 8/1991 | Hatcher |
| 5,048,784 A | 9/1991 | Schwartz et al. |
| 5,074,000 A | 12/1991 | Soltani et al. |
| 5,211,367 A | 5/1993 | Musculus |
| 5,251,864 A | 10/1993 | Itou |
| 5,257,767 A | 11/1993 | McConnell |
| 5,294,087 A | 3/1994 | Drabczyk et al. |
| 5,400,720 A | 3/1995 | Stevens |
| 5,460,460 A | 10/1995 | Alexander |
| 5,580,027 A | 12/1996 | Brodersen |
| 5,588,377 A | 12/1996 | Fahmian |
| 5,588,727 A | 12/1996 | D'Agaro et al. |
| 5,632,205 A | 5/1997 | Lechman et al. |
| 5,632,209 A | 5/1997 | Sakakibara |
| 5,694,864 A | 12/1997 | Langewellpott |
| 5,695,173 A | 12/1997 | Ochoa et al. |
| 5,722,513 A | 3/1998 | Rowan et al. |
| 5,729,430 A | 3/1998 | Johnson |
| 5,765,797 A | 6/1998 | Greene et al. |
| 5,823,487 A | 10/1998 | Kirchhoff et al. |
| 5,829,948 A | 11/1998 | Becklund |
| 5,836,562 A | 11/1998 | Danzyger et al. |
| 5,895,020 A | 4/1999 | Danzyger et al. |
| 5,926,876 A | 7/1999 | Haigh et al. |
| 5,957,426 A | 9/1999 | Brodersen |
| 6,076,785 A | 6/2000 | Oddsen, Jr. |
| 6,098,961 A | 8/2000 | Gionet |
| 6,135,546 A | 10/2000 | Demtchouk |
| 6,148,739 A | 11/2000 | Martin |
| 6,176,456 B1 | 1/2001 | Wisniewski |
| 6,179,261 B1 | 1/2001 | Lin |
| 6,220,558 B1 | 4/2001 | Broder et al. |
| 6,269,753 B1 | 8/2001 | Roddan |
| 6,273,382 B1 | 8/2001 | Pemberton |
| 6,381,335 B2 | 4/2002 | Juszkiewicz et al. |
| 6,488,248 B1 | 12/2002 | Watt et al. |
| 6,516,478 B2 | 2/2003 | Cook et al. |
| 6,533,229 B1 | 3/2003 | Hung |
| 6,533,479 B2 | 3/2003 | Kochanski |
| 6,550,740 B1 | 4/2003 | Burer |
| 6,672,430 B1 | 1/2004 | Boucher et al. |
| 6,701,853 B1 | 3/2004 | Hwang |
| 6,702,372 B2 | 3/2004 | Tholkes et al. |
| 6,722,618 B1 | 4/2004 | Wu |
| 6,742,768 B2 | 6/2004 | Alba |
| 6,792,876 B2 | 9/2004 | Lin |
| 6,857,493 B2 | 2/2005 | Shupp et al. |
| 6,938,866 B2 | 9/2005 | Kirchhoff |
| 7,048,236 B2 | 5/2006 | Benden et al. |
| 7,188,813 B2 | 3/2007 | Kollar |
| 7,204,193 B2 | 4/2007 | Scherrer et al. |
| 7,207,629 B2 | 4/2007 | Goetz et al. |
| 7,246,784 B2 | 7/2007 | Lopez |
| 7,568,675 B2 | 8/2009 | Catton |
| 7,575,205 B2 | 8/2009 | Kirchhoff |
| 7,677,518 B2 | 3/2010 | Chouinard et al. |
| D622,350 S | 8/2010 | Gramegna et al. |
| 7,793,597 B2 | 9/2010 | Bart et al. |
| 7,841,570 B2 | 11/2010 | Mileos et al. |
| 7,845,665 B2 | 12/2010 | Borisoff |
| 7,946,551 B1 | 5/2011 | Cvek |
| 7,950,338 B2 | 5/2011 | Smed |
| 7,988,232 B2 | 8/2011 | Weber et al. |
| 8,015,638 B2 | 9/2011 | Shimada et al. |
| 8,132,518 B2 | 3/2012 | Kim et al. |
| 8,303,062 B2 | 11/2012 | Zanelli |
| 8,469,152 B2 | 6/2013 | Olsen et al. |
| 8,490,933 B2 | 7/2013 | Papic et al. |

**US 12,318,003 B1**

Page 3

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 8,544,391 | B2 | 10/2013 | Knox et al. |
| 8,671,853 | B2 | 3/2014 | Flaherty |
| 8,684,339 | B2 | 4/2014 | Deml et al. |
| 8,800,976 | B2 | 8/2014 | Bethina et al. |
| 8,931,750 | B2 | 1/2015 | Kohl et al. |
| 8,950,343 | B2 | 2/2015 | Huang |
| 9,049,923 | B1 | 6/2015 | Delagey et al. |
| 9,055,810 | B2 | 6/2015 | Flaherty |
| 9,113,703 | B2 | 8/2015 | Flaherty |
| 9,133,974 | B2 | 9/2015 | Tholkes et al. |
| 9,133,976 | B2 | 9/2015 | Lin et al. |
| 9,232,855 | B2 | 1/2016 | Ergun et al. |
| 9,326,598 | B1 | 5/2016 | West et al. |
| 9,440,559 | B2 | 9/2016 | Gundall et al. |
| 9,480,332 | B2 | 11/2016 | Han |
| 9,504,316 | B1 | 11/2016 | Streicher et al. |
| 9,554,644 | B2 | 1/2017 | Flaherty et al. |
| 9,668,572 | B2 | 6/2017 | Ergun et al. |
| 9,681,746 | B1 | 6/2017 | Chen |
| 9,809,136 | B2 | 11/2017 | Haller et al. |
| 9,815,672 | B2 | 11/2017 | Baudermann |
| 9,854,904 | B2 | 1/2018 | Getz |
| 9,955,780 | B2 | 5/2018 | Koch |
| 9,961,991 | B1 | 5/2018 | Chen |
| 9,981,571 | B2 | 5/2018 | Garing |
| 9,993,068 | B2 | 6/2018 | Lin et al. |
| 10,018,298 | B2 | 7/2018 | Goldish et al. |
| 10,023,355 | B2 | 7/2018 | Taylor et al. |
| D830,739 | S | 10/2018 | Min |
| 10,114,352 | B2 | 10/2018 | Matlin |
| D832,623 | S | 11/2018 | Flaherty et al. |
| 10,123,613 | B2 | 11/2018 | Hall et al. |
| 10,159,336 | B2 | 12/2018 | Liao et al. |
| D841,014 | S | 2/2019 | Laudadio et al. |
| D845,037 | S | 4/2019 | Min |
| D845,678 | S | 4/2019 | Laudadio et al. |
| 10,244,861 | B1 | 4/2019 | Poniatowski |
| 10,258,148 | B1 | 4/2019 | Donner et al. |
| 10,258,149 | B2 | 4/2019 | Zhong |
| 10,264,877 | B2 | 4/2019 | Hu et al. |
| 10,306,977 | B2 | 6/2019 | Wong |
| D854,775 | S | 7/2019 | Chang et al. |
| 10,405,647 | B2 | 9/2019 | Laudadio et al. |
| 10,413,055 | B2 | 9/2019 | Laudadio et al. |
| D862,936 | S | 10/2019 | Laudadio et al. |
| 10,485,336 | B1 | 11/2019 | Laudadio et al. |
| D870,490 | S | 12/2019 | Hu |
| 10,499,730 | B2 | 12/2019 | Kim et al. |
| 10,517,390 | B2 | 12/2019 | Xiang et al. |
| 10,524,565 | B2 | 1/2020 | Ergun et al. |
| 10,542,817 | B2 | 1/2020 | Swartz et al. |
| 10,544,019 | B2 | 1/2020 | Kochie et al. |
| 10,568,416 | B1 | 2/2020 | Poniatowski |
| 10,575,630 | B1 | 3/2020 | Poniatowski |
| D901,959 | S | 11/2020 | Chang |
| 10,849,424 | B2 | 12/2020 | Laudadio et al. |
| 10,869,549 | B2 | 12/2020 | Xiang et al. |
| 10,893,748 | B1 | 1/2021 | Poniatowski |
| 11,058,217 | B2 | 7/2021 | Laudadio et al. |
| 11,083,282 | B1 | 8/2021 | Liu |
| 11,134,773 | B1 | 10/2021 | Poniatowski |
| 11,134,774 | B1 | 10/2021 | Poniatowski |
| 11,140,977 | B1 | 10/2021 | Poniatowski |
| 11,147,366 | B1 | 10/2021 | Poniatowski |
| 11,160,367 | B1 | 11/2021 | Poniatowski |
| 11,219,307 | B2 | 1/2022 | Laudadio et al. |
| 11,388,989 | B1 | 7/2022 | Poniatowski |
| 11,388,991 | B1 | 7/2022 | Poniatowski |
| 11,395,544 | B1 | 7/2022 | Poniatowski |
| 11,464,325 | B1 | 10/2022 | Poniatowski |
| 11,470,959 | B1 | 10/2022 | Poniatowski |
| 11,717,080 | B2 | 8/2023 | Laudadio et al. |
| 11,771,218 | B2 | 10/2023 | Laudadio et al. |
| 11,800,927 | B1 | 10/2023 | Poniatowski |
| 11,849,843 | B1 | 12/2023 | Poniatowski |
| 11,857,073 | B1 | 1/2024 | Poniatowski |
| 11,864,654 | B1 | 1/2024 | Poniatowski |
| 11,910,926 | B1 | 2/2024 | Poniatowski |
| 11,925,264 | B1 | 3/2024 | Poniatowski |
| 11,944,196 | B1 | 4/2024 | Poniatowski |
| 11,950,699 | B1 | 4/2024 | Poniatowski |
| 11,980,289 | B1 | 5/2024 | Poniatowski |
| 12,082,695 | B1 | 9/2024 | Poniatowski |
| 12,082,696 | B1 | 9/2024 | Poniatowski |
| 12,102,229 | B1 | 10/2024 | Poniatowski |
| 12,121,149 | B1 | 10/2024 | Poniatowski |
| 12,193,569 | B1 | 1/2025 | Poniatowski |
| 12,226,015 | B1 | 2/2025 | Poniatowski |
| 2003/0042380 | A1 | 3/2003 | Hagglund et al. |
| 2003/0213415 | A1 | 11/2003 | Ross et al. |
| 2004/0035332 | A1 | 2/2004 | Lin |
| 2004/0040480 | A1 | 3/2004 | Hwang |
| 2005/0029849 | A1 | 2/2005 | Goetz et al. |
| 2005/0120922 | A1 | 6/2005 | Brooks |
| 2007/0001077 | A1 | 1/2007 | Kirchhoff |
| 2007/0080564 | A1 | 4/2007 | Chen |
| 2007/0266912 | A1 | 11/2007 | Swain |
| 2007/0295882 | A1 | 12/2007 | Catton |
| 2008/0000393 | A1 | 1/2008 | Wilson et al. |
| 2009/0090832 | A1 | 4/2009 | Mileos et al. |
| 2009/0145336 | A1 | 6/2009 | Kenny |
| 2009/0146389 | A1 | 6/2009 | Borisoff |
| 2009/0200437 | A1 | 8/2009 | Smed |
| 2010/0242174 | A1 | 9/2010 | Morrison et al. |
| 2010/0257671 | A1 | 10/2010 | Shimada et al. |
| 2011/0001033 | A1 | 1/2011 | Kohl et al. |
| 2011/0024958 | A1 | 2/2011 | Deml et al. |
| 2012/0060291 | A1 | 3/2012 | Gamman et al. |
| 2012/0097822 | A1 | 4/2012 | Hammarskiöld |
| 2012/0188302 | A1 | 7/2012 | Zanelli |
| 2013/0145972 | A1 | 6/2013 | Knox et al. |
| 2013/0193392 | A1 | 8/2013 | McGinn |
| 2013/0199420 | A1 | 8/2013 | Hjelm |
| 2013/0340655 | A1 | 12/2013 | Flaherty |
| 2014/0041554 | A1 | 2/2014 | Huang |
| 2014/0144352 | A1 | 5/2014 | Roberts |
| 2014/0158026 | A1 | 6/2014 | Flaherty |
| 2014/0248114 | A1 | 9/2014 | Sawyer |
| 2014/0339747 | A1 | 11/2014 | Bethina et al. |
| 2014/0360411 | A1 | 12/2014 | Hatter |
| 2015/0028787 | A1 | 1/2015 | Sekine et al. |
| 2015/0216296 | A1 | 8/2015 | Mitchell |
| 2015/0231992 | A1 | 8/2015 | Gundall et al. |
| 2015/0232005 | A1 | 8/2015 | Haller et al. |
| 2015/0274038 | A1 | 10/2015 | Garing |
| 2015/0289641 | A1 | 10/2015 | Davis et al. |
| 2015/0368082 | A1 | 12/2015 | Davis et al. |
| 2015/0375896 | A1 | 12/2015 | Taylor et al. |
| 2016/0051042 | A1 | 2/2016 | Koch |
| 2016/0060084 | A1 | 3/2016 | Baudermann |
| 2016/0106205 | A1 | 4/2016 | Hall et al. |
| 2016/0170402 | A1 | 6/2016 | Lindström |
| 2016/0249737 | A1 | 9/2016 | Han |
| 2016/0258573 | A1 | 9/2016 | Goldish et al. |
| 2016/0260019 | A1 | 9/2016 | Ruiz et al. |
| 2016/0309889 | A1 | 10/2016 | Lin et al. |
| 2016/0338486 | A1 | 11/2016 | Martin |
| 2016/0353880 | A1 | 12/2016 | Sigal et al. |
| 2017/0071332 | A1 | 3/2017 | Herring et al. |
| 2017/0174486 | A1 | 6/2017 | Kochie et al. |
| 2017/0196351 | A1 | 7/2017 | Failing |
| 2017/0354245 | A1 | 12/2017 | Martin et al. |
| 2017/0360192 | A1 | 12/2017 | Hu |
| 2018/0008037 | A1 | 1/2018 | Laudadio |
| 2018/0055214 | A1 | 3/2018 | Kim et al. |
| 2018/0103752 | A1 | 4/2018 | Zhong |
| 2018/0125227 | A1 | 5/2018 | Xiang et al. |
| 2018/0160799 | A1 | 6/2018 | Westergård et al. |
| 2018/0177289 | A1 | 6/2018 | Chen |
| 2018/0213929 | A1 | 8/2018 | Ergun et al. |
| 2018/0255919 | A1 | 9/2018 | Swartz et al. |
| 2018/0279770 | A1 | 10/2018 | Crowe et al. |
| 2018/0360208 | A1 | 12/2018 | Liao et al. |
| 2019/0110558 | A1 | 4/2019 | Wong |

**US 12,318,003 B1**

Page 4

(56)  **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 2019/0183239 | A1 | 6/2019 | Semmelrath et al. |
| 2019/0269237 | A1 | 9/2019 | Zhu |
| 2020/0029685 | A1 | 1/2020 | Du et al. |
| 2020/0107633 | A1 | 4/2020 | Kang |
| 2023/0329430 | A1 | 10/2023 | Laudadio et al. |

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| AU | 2014216002 A1 | 3/2015 |
| CA | 2814945 C | 4/2019 |
| CN | 1142343 A | 2/1997 |
| CN | 2637251 Y | 9/2004 |
| CN | 2781893 Y | 5/2006 |
| CN | 201657970 U | 12/2010 |
| CN | 102599728 A | 7/2012 |
| CN | 202681005 U | 1/2013 |
| CN | 202681013 U | 1/2013 |
| CN | 202874336 U | 4/2013 |
| CN | 101711220 B | 11/2013 |
| CN | 203333240 U | 12/2013 |
| CN | 103653780 A | 3/2014 |
| CN | 203934825 U | 11/2014 |
| CN | 204541230 U | 8/2015 |
| CN | 105124920 A | 12/2015 |
| CN | 204949970 U | 1/2016 |
| CN | 104692286 B | 4/2017 |
| CN | 104540707 B | 5/2017 |
| CN | 107048694 A | 8/2017 |
| CN | 107048695 A | 8/2017 |
| CN | 107212587 A | 9/2017 |
| CN | 107744256 A | 3/2018 |
| CN | 107756350 A | 3/2018 |
| CN | 107912868 A | 4/2018 |
| CN | 207186305 U | 4/2018 |
| CN | 109008216 A | 12/2018 |
| CN | 208403596 U | 1/2019 |
| CN | 110840072 A | 2/2020 |
| CN | 108024625 B | 8/2021 |
| DE | 2851555 A1 | 6/1980 |
| DE | 8606822 U1 | 8/1991 |
| DE | 9302967 U1 | 4/1993 |
| DE | 4424564 A1 | 1/1996 |
| DE | 29515642 U1 | 1/1996 |
| DE | 69111809 T2 | 4/1996 |
| DE | 19526596 A1 | 12/2004 |
| DE | 102013008020 A1 | 11/2014 |
| DE | 202016101126 U1 | 6/2016 |
| EP | 0342779 B1 | 5/1993 |
| EP | 0531385 B1 | 8/1995 |
| EP | 0448340 B1 | 2/1996 |
| EP | 0613852 B1 | 11/1997 |
| EP | 2745733 A1 | 6/2014 |
| EP | 3092918 A1 | 11/2016 |
| FR | 2252835 A1 | 6/1975 |
| FR | 2637165 A1 | 4/1990 |
| FR | 2894794 A1 | 6/2007 |
| FR | 3028735 A1 | 5/2016 |
| JP | 2012030022 A | 2/2012 |
| JP | 5861051 B2 | 2/2016 |
| JP | 2017045506 A | 3/2017 |
| KR | 100802663 B1 | 2/2008 |
| KR | 20140004886 U | 9/2014 |
| KR | 101527121 B1 | 6/2015 |
| KR | 200479292 Y1 | 1/2016 |
| KR | 20160074221 A | 6/2016 |
| KR | 101635611 B1 | 7/2016 |
| KR | 101747132 B1 | 6/2017 |
| KR | 101969133 B1 | 8/2019 |
| NL | 1011051 C2 | 7/2000 |
| NL | 2000346 C2 | 5/2008 |
| TW | I531523 B | 5/2016 |
| WO | 8304168 A1 | 12/1983 |
| WO | 8606053 A1 | 10/1986 |
| WO | 1986006054 A1 | 10/1986 |
| WO | 1988005759 A1 | 8/1988 |
| WO | 1991011979 A1 | 8/1991 |
| WO | 1991017906 A1 | 11/1991 |
| WO | 2008002373 A2 | 1/2008 |
| WO | 2014027010 A1 | 2/2014 |
| WO | 2014180572 A1 | 11/2014 |
| WO | 2015160825 A2 | 10/2015 |
| WO | 2016129971 A1 | 8/2016 |
| WO | 2016187212 A1 | 11/2016 |
| WO | 2016200318 A1 | 12/2016 |
| WO | 2017045506 A1 | 3/2017 |
| WO | 2017053200 A1 | 3/2017 |
| WO | 2018093007 A1 | 5/2018 |
| WO | 2019001506 A1 | 1/2019 |
| WO | 2019001507 A1 | 1/2019 |

OTHER PUBLICATIONS

Adjustable Desk: VARIDESK, http://www.varidesk.com, United States of America, Mar. 30, 2013.

ERGOTRON, http://www.ergotron.com, United States of America, Sep. 29, 2014.

Levine, James A. "Sitting down is Killing you! Heart disease, obesity, depression and crumbling bones—a terrifying new book by a top doctor reveals they are all linked to the hours we spend in chairs" Daily Mail Online, Jul. 26, 2014, 9 pages [online], [retrieved on Jun. 30, 2017]. Retrieved from the Internet at: http://www.dailymail.co.uk/news/article-2706317.

Lohr, Steve, Taking a Stand for Office Ergonomics, Dec. 1, 2012, New York Times, United States, retrieved from http://www.nytimes.com/2012/12/02/business/stand-up-desks-gaining-favor-in-the-workplace.html on Aug. 29, 2022.

Case: 1:25-cv-07157 Document #: 1 Filed: 06/26/25 Page 12 of 50 PageID #:12



FIG. 1



FIG. 1B



FIG. 1C



FIG. 1D



FIG. 2



FIG. 2B



FIG. 2C



FIG. 2D



FIG. 3



FIG. 3B

Case: 1:25-cv-07157 Document #: 1 Filed: 06/26/25 Page 22 of 50 PageID #:22



FIG. 4



FIG. 4B



FIG. 4C



FIG. 4D



FIG. 4E



FIG. 4F

Case: 1:25-cv-07157 Document #: 1 Filed: 06/26/25 Page 28 of 50 PageID #:28



FIG. 5



FIG. 5B

FIG. 5C



FIG. 5D



FIG. 6



FIG. 6B

Case: 1:25-cv-07157 Document #: 1 Filed: 06/26/25 Page 34 of 50 PageID #:34



FIG. 7



FIG. 7B



FIG. 8



FIG. 9

Case: 1:25-cv-07157 Document #: 1 Filed: 06/26/25 Page 38 of 50 PageID #:38



FIG. 10



FIG. 10B



FIG. 10C

US 12,318,003 B1

**1**

# DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY

## CROSS REFERENCE TO RELATED APPLICATIONS

This application is a continuation application of U.S. patent application Ser. No. 18/481,082, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, filed Oct. 4, 2023, which is a continuation application of U.S. patent application Ser. No. 17/985,137, titled DESKTOP WORK-SPACE THAT ADJUSTS VERTICALLY, issued as U.S. Pat. No. 11,910,926 on Feb. 27, 2024, which is a continuation application of U.S. patent application Ser. No. 17/493, 812, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, issued as U.S. Pat. No. 11,944,196 on Apr. 2, 2024, 2024, which is a continuation application of U.S. patent application Ser. No. 16/785,647, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, issued as U.S. Pat. No. 11,134,773 on Oct. 5, 2021, which is a continuation application of U.S. patent application Ser. No. 16/372,334, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, issued as U.S. Pat. No. 10,575, 630 on Mar. 3, 2020, which is a divisional application of Ser. No. 15/628,558, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, issued as U.S. Pat. No. 10,244, 861 on Apr. 2, 2019, which is a divisional application of U.S. patent application Ser. No. 15/004,926, titled DESKTOP WORKSPACE THAT ADJUSTS VERTICALLY, filed Jan. 23, 2016, which claims the benefit of U.S. Provisional Patent Application No. 62/107,380, titled DESKTOP WORK-SPACE THAT ADJUSTS VERTICALLY, filed Jan. 24, 2015. The entire contents of each of these related applications is incorporated by reference herein.

## TECHNICAL FIELD

This disclosure relates to a desktop workspace platform that adjusts up and down vertically.

## BACKGROUND

In recent years studies have been conducted to show the health benefits of not sitting or standing for prolonged periods of time. It has been shown that sitting for long periods of time, day after day, increases the rate of all-cause mortality. It has even been said that sitting is the new smoking. A healthier work environment could be achieved by standing a portion of your day that you typically spend sitting. A combination of standing and sitting can reduce your risk of obesity, diabetes, cardiovascular disease and cancer.

There are many different types of work surfaces today. Most of these are stationary, in that they do not adjust in height. In recent years, entire desks that adjust in height have become more common. Most people already have a stationary desk, so purchasing an entire new desk may be unreasonable for some.

## SUMMARY

There are a few adjustable desk platforms that sit on an existing desk, however, designs of such products have left much room for improvement. Some notable areas for improvement include, but are not limited to; the need for straight vertical motion of the desktop platform where the work surface does not protrude out toward the operator

**2**

when elevated, a motorized adjustable height mechanism or other motor assisted system, a holding or locking mechanism that does not limit the work surface to only preset heights, a higher maximum adjustable height to satisfy taller users, improved load distribution, improved design, improved appearance, increased load capacity, and a more compact design once in a lowered position.

A desktop workspace that adjusts vertically includes a work surface platform that acts as a work surface platform. A height adjustment mechanism allows the work surface platform to raise and lower to the desired height of the operator. This desktop workspace includes at least one set of arms as part of the height adjustment mechanism that utilizes a scissor motion to move the work surface platform up and down.

In one example, a desktop workspace that adjusts vertically is comprised of a work surface platform; a base configured to sit on an existing platform such as a desk; a height adjustable mechanism including at least one set of arms that connect at a pivot point creating a scissoring motion as part of the method to raise and lower the said work surface platform to various heights.

## BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a perspective view of an example adjustable desk including a work surface platform, base, and height adjustment mechanism.

FIG. 1B is a perspective view of an example adjustable desk including a work surface platform, base, and height adjustment mechanism, with alternative sliding mechanisms.

FIG. 1C is a perspective view of an example adjustable desk with alternative sliding mechanisms that incorporate rolling wheels, and a keyboard tray mechanism.

FIG. 1D is a perspective view of an example adjustable desk with alternative sliding mechanisms that incorporate rolling wheels, and a keyboard tray mechanism as shown in FIG. 1C, but without a base.

FIG. **2** is a perspective view from another angle of an example adjustable desk including a work surface platform, base, and height adjustment mechanism.

FIG. 2B is a perspective view from another angle of an example adjustable desk including a work surface platform, base, and height adjustment mechanism, with alternative sliding mechanisms.

FIG. 2C is a perspective view from another angle of an example adjustable desk with alternative sliding mechanisms that incorporate rolling wheels and a keyboard tray mechanism.

FIG. **2**D is a perspective view an example adjustable desk with the alternative sliding mechanisms that incorporates rolling wheels and a keyboard tray mechanism as shown in FIG. 2C, but with gas springs rather than coil springs.

FIG. **3** is a side view of an example adjustable desk including a work surface platform, base, and height adjustment mechanism.

FIG. 3B is a side view of an example adjustable desk including a work surface platform, base, height adjustment mechanism, alternative sliding mechanisms, and a keyboard tray mechanism.

FIG. **4** is a perspective view of an example height adjustment mechanism from FIG. 1.

FIG. 4B is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but without a cross beam.

US 12,318,003 B1

FIG. **4**C is a perspective view of an alternative height adjustment mechanism to that shown in FIG. **4**.

FIG. **4**D is a perspective view of an alternative height adjustment mechanism to that shown in FIG. **4**.

FIG. **4**E is a perspective view of an alternative height adjustment mechanism to that shown in FIG. **4**.

FIG. **4**F is a perspective view of an alternative height adjustment mechanism to that shown in FIG. **4**.

FIG. **5** is a perspective view of parts of an example adjustable desk including sliding mechanism locations and pivot points of this disclosure from FIG. **1**.

FIG. **5**B is a perspective view of parts of an example of a height adjustment mechanism of this disclosure from FIGS. **1** and **1**B with alternative sliding mechanisms.

FIG. **5**C is a perspective view of parts of an example of a height adjustment mechanism from FIGS. **1** and **1**B with alternative sliding mechanisms.

FIG. **5**D is a perspective view of parts of an example of a height adjustment mechanism and locking mechanism from FIG. **1**C.

FIG. **6** is a perspective view of an example adjustable desk wherein the work surface platform is in a partially raised state.

FIG. **6**B is a perspective view of an example adjustable desk where the work surface platform is in a partially raised state with an example keyboard tray mechanism.

FIG. **7** is a perspective view of an example adjustable desk in a very compact state, with the work surface platform in a completely lowered position.

FIG. **7**B is a perspective view of an example adjustable desk in a very compact state, with the work surface platform in a completely lowered position, with alternative sliding mechanisms.

FIG. **8** is a perspective view of example elements intended to additionally raise the height of monitors or other items.

FIG. **9** is a perspective view of an example adjustable desk with monitor raising elements resting on top of the work surface platform.

FIG. **10** is a perspective view of parts of an example of a keyboard tray mechanism.

FIG. **10**B is a perspective view of an example adjustable desk with an alternative keyboard tray mechanism attached.

FIG. **10**C is a perspective view of an example adjustable desk with keyboard tray mechanism attached and in a closed position.

DETAILED DESCRIPTION

The Desktop Workspace That Adjusts Vertically, also referred to as the "desktop workspace" in this document, includes a device and a method to raise and lower a platform that is part of the device. An exemplary use of the device is a work surface such as a desk, which can be moved to a desired vertical position. For example, the platform could hold objects such as a laptop, monitor, tablet, keyboard, mouse, and other desk items such as a stapler. The Desktop Workspace That Adjusts Vertically may include ancillary devices such as a monitor raiser, an external keyboard holder, mouse holder, cable organizer, or other devices. The platform raises vertically without protruding out along the horizontal plane, keeping the individual using the device from having to step backward to use the work surface platform when it is in a raised position. This configuration allows the operator to utilize the work surface platform at various heights. The examples and description suggest the device is used for supporting typical desktop objects, but the

scope of this disclosure is intended to support other objects and to be used in other applications.

The Desktop Workspace That Adjusts Vertically can be placed on an existing surface to provide a variable height working area that is adjusted by the operator. The Desktop Workspace That Adjusts Vertically includes at least one set of two arms that connect along their lengths at a pivot point, allowing a scissoring motion, which is part of the method for raising and lowering the work surface platform. When raised, the work surface platform raises in a substantially straight motion so that it stays in-line with the base. An element or mechanism such as a spring or motor is configured to provide a force to assist in the elevation of the work surface platform. A locking mechanism is configured to secure the work surface platform at a given height.

The Desktop Workspace That Adjusts Vertically includes a height adjustment mechanism configured to assist in raising the work surface platform parallel to the surface it sits on, without moving back and forth or left to right; keeping the individual using the device from having to move backward to use the work surface platform when it is in a raised position. The height adjustment mechanism(s) may include items such as springs, gas springs, shock absorbers, an electric motor(s), or a linear actuator(s).

The Desktop Workspace That Adjusts Vertically is directed to help individuals from sitting or standing for prolonged periods of time while they work. Studies have shown that sitting or standing for long periods of time can be detrimental to one's health.

The Desktop Workspace That Adjusts Vertically is designed to assist individuals to be more alert and productive as they work. Studies show that moving from a sitting to standing position and vice versa help the human body to be more awake and alert.

FIGS. **1**, **1**B, **1**C, **2**, **2**B, **2**C, **6**, **7**, **7**B, **9**, and **10**C show examples of The Desktop Workspace That Adjusts Vertically an assembled state. As shown, the desktop workspace includes a work surface platform **10**, a base **12**, and a height adjustment mechanism **14** residing between the work surface platform **10** and base **12**. The examples show that platform **10** is a work surface platform that supports desk items; for example, monitors, tablets, Computers, notebooks, and other objects. The height adjustment example **14** includes at least one set of two arms **16** & **18**. Arms **16** & **18** are connected at some point along their shafts at pivot point **28**. These pivoting arms connect at pivot points **24** and **26** on one end and slide along a sliding mechanism **20** or **22** at pivot and sliding point **30** or **32**. The arms pivot at **28**, arm **16** slides along **20** and arm **18** slides along **22**, creating a scissor motion to allow the work surface platform **10** to move up and down. This example with the pivoting arms moving in the scissor motion is the basis of the height adjustment mechanism **14**. Base **12** is the base that the height adjustment mechanism **14** connects to. Base **12** consists of one piece of material or multiple pieces of material. FIG. **1** portrays base **12** as one piece, while FIG. **1**B portrays base **12** as two pieces, and FIG. **1**C portrays base **12** as one piece with portions removed.

Base **12** is connected to pivot point **26** and sliding mechanism **20**. Sliding mechanisms **20** and **22** could also be directly connected to the arm(s) in the form of a slider or wheel, as portrayed in FIG. **1**C. The example in FIGS. **1** and **2** shows the present sliding mechanisms **20** and **22** as a groove cut through the wall of the supporting material. FIGS. **1**B and **2**B show another design of the present sliding mechanisms **20** and **22** as channel or track. FIGS. **1**C and **2**C show yet another design of the present sliding mechanisms

5

20 and 22 as a rolling device such as a wheel or bearing. All three are methods to illustrate that there is more than one possible way to accomplish the intended sliding motion. Arm 16 attaches to the sliding mechanism 20 at point 32. Arm 16 moves back and forth along sliding mechanism 20 as part of the scissor motion used to obtain change in height of the work surface platform 10. The sliding action that sliding mechanisms 20 and 22 assist could be accomplished through means other than the illustrated examples, for example, a track system, roller wheel system, or some other means could be used to allow arm 16 and 18 to move in a back and forth motion. This disclosure is not intended to limit the means of the sliding motion, but to establish the fact that the sliding motion is part of the function of the adjustable height mechanism. The mentioned sliding motion is part of the overall scissor motion that is created by the design to vertically raise the work surface platform 10.

Pivot point 26 is the element that attaches the base 12 to arm 18. The examples in FIGS. 1 and 2 shows pivot 26 as being part of the wall of the base, and FIGS. 1B, 1C, 2B, and 2C shows pivot 26 as being a bracket or similar connected to base 12; pivot 26 could be located further in towards the center of base 12 and could be created as a stand-alone element such as a bracket or similar device. Pivot 26 is to be understood as a connection between base 12 and arm 18, and to be a pivot point that allows arm 18 to rotate as part of the scissor motion of height adjustment mechanism 14.

In some examples, the desktop workspace could exclude base 12, as shown in FIG. 1D. In such examples, height adjustment mechanism 14 connects directly to the desk or surface that the desktop workspace that adjusts vertically is sitting on. The lower portion of arm 18 connects directly to the surface with a pivot point similar to element 26. The lower portion of arm 16 connects to the surface and be guided to slide in a similar motion with an independent sliding mechanism such as, but not limited to, a track, channel, wheel, rail, or slot.

FIG. 4 shows an example of part of height adjustment mechanism 14, which assists in the vertical motion achieved to move the work surface platform 10 up and down in a smooth motion. Height adjustment 14 is designed so that it creates a vertical motion without any lateral or protruding motion side to side. Said another way, the scissor motion that height adjustment 14 creates allows work surface platform 10 to stay in alignment with base 12 as it raises or lowers. This alignment is intended, however some examples could include a method that does not align element 10 and 12 as raised and lowered.

Height adjustment mechanism 14 consists of one or more pairs of pivot arms 16 & 18, which have a pivoting point 28 at some point along their axis. Height adjustment mechanism 14 could also include a design where arms 16 & 18 do not actually connect at pivot point 28, but still provide a similar motion. Arm 16 connects at pivot element 24, and at point 32 which slide along sliding element 20. Similarly, arm 18 connects at pivot element 26 and at pivot point 30, which slides along sliding element 22. Height adjustment mechanism 14 also includes components that make the disclosure more rigid, such as cross beam supports labeled as element 68 in FIGS. 1C and 2C. Pivot arms, pivot points, and sliding elements are designed to fit compactly together when the desktop workspace is in a lowered position, as can be seen in FIGS. 7, 7B, and 10C. All elements align side-by-side in such a manner that when fully lowered the desktop workspace is very compact, looks sleek, and takes up minimal vertical space. The desktop workspace accomplishes such a compact state by having element 20 and 24

6

outside arm 16, which is outside arm 18, which is outside element 22. This arrangement of elements allows the elements' to not overlap when desktop workspace that adjusts vertically is in a fully lowered position providing a substantially compact state. The desktop workspace is not limited to specific elements or locations of elements to achieve the height adjustment motion that results in a compact design where elements do not overlap.

The illustrated examples of FIGS. 1 and 1B suggests that pivot points 26 and 24 are located in the back of desktop workspace, and that sliding mechanisms 20 and 22 are located in the front. The illustrated examples of FIG. 1C suggests that pivot points 26 and 24 are located in the front of the desktop workspace and that sliding mechanisms 20 and 22 are located in the back. Some examples include a design where the pivot points and sliding mechanisms are at opposite sides, or some combination of both.

As can be seen in FIGS. 2, 2B, 2C, 4, 5B, and 5C pivoting arms, are attached to a cross beam 34. Cross beam 34 assists in stabilizing the invention and assist all elements of the height adjustment mechanism to move in concert when a force is applied. The force can be applied from various methods and on various points of cross beam 34, pivot arms 16 & 18, pivot elements 26 & 24, or sliding mechanisms 20 or 22. FIG. 4D is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but with element 36 connected on a point of cross beam 34 to one of pivot elements 26. FIG. 4E is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but with element 36 connected to one of pivot arms 16 via an arm pivot 25. FIG. 4F is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but with an upwardly extending element 36 connected to one of pivot arms 16 via an arm pivot 25. Some examples include a design where element 34 does not span across the mechanism connecting all or some of the arms.

FIG. 4 shows the force being applied by element 36 to cross beam 34. Element 36 can apply a pushing and pulling force to cross beam 36, which causes pivot arms 16 and 18 to move in a scissor motion. The example is intended to suggest that element 36, which applies force to height adjustment mechanism 14, can be a variety of different mechanisms, elements, or represent manual human force. For example, the force that element 36 provides could come from; a linear actuator, AC or DC motor, human force, gravity, springs, other objects with kinetic energy, or another source of force. For example, FIG. 4 illustrates element 36 as a linear actuator, while FIG. 5C illustrates element 36 as a pair of springs.

The combination of height adjustment mechanism 14 and a force represented by element 36, create the scissor motion that moves the work surface platform vertically up and down. Examples portrayed in FIGS. 4, and 5 show the scissor motion of height adjustment mechanism 14.

Examples can utilize element 36 or similar element in a different location; for example, the element could attach directly to arms 16 or 18, or to one of the pivot points, instead of to element 34. Some examples may not include element 34 or the like, where such a crossbeam or connection is not deemed necessary. FIG. 4B is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but without a cross beam 34. In FIG. 4B, elements 36 attach directly to arms 18 through arm pivot points 31, instead of to element 34. FIG. 4C is a perspective view of an example height adjustment mechanism as shown in FIG. 4, but with element 36 connected to one of the scissoring pivot points 28 instead of to cross beam 34.

US 12,318,003 B1

7

Examples in FIGS. **4**, and **5** include arrows that show some of the possible motions of mechanism **14**. Pivot arms are connected to one another at pivot point **28**. As one end of arm **16** moves along sliding mechanism **20**, the other end of the arm moves up or down vertically. When arm **18** pivots at point **26**, the other end of the arm slides along sliding mechanism **22**, which can be seen in FIGS. **2**, **2B**, and **2C** and moves up and down vertically.

The height adjustment mechanism moves vertically and is held or locked into position at various heights. Examples of the height adjustment mechanism use various methods to lock or hold in place. For example, element **36** acts as the locking device, or the locking device can be included in sliding mechanism(s) **20** & **22**, or the locking device can be included in pivot point(s) **26** and **24**, or the locking mechanism could entail another element not mentioned. FIG. **5D** portrays a locking device that could include element **34** or other element engaging with element **44**. Pins or other element, portrayed as element **48**, engage with teeth or other element, portrayed as element **46** to lock the height adjustment mechanism in a desired position. The locking element can include, but not limited to, a linear actuator, a motor, applied pressure, locking teeth, or some other method to prevent arms **16** and **18** from moving, so that work surface platform **10** does not change vertical height. Applications utilizing a linear actuator or similar can allow the operator to adjust the height without the limitations of preset heights that some locking mechanisms only provide. Instead of preset heights created by an element with features such as preset holes, the linear actuator or something similar would allow the operator to set the height limit by stopping the linear actuator or similar at any point the operator chooses. The desktop workspace includes a locking mechanism that maintains the vertical position of surface **10**; the examples are not limited to specific elements to achieve the height locking function.

Examples include a means to unlock the device so that the work surface platform **10** can change height. Examples can include, but not limited to, a button(s) to control a motor or the like, a handle that the user pulls on to unlock the device, or another device that unlocks the locking device. FIG. **5D** portrays an example of a locking mechanism where element **44** acts as a handle that once pressure is applied to can both lock and unlock the height adjustment mechanism by engaging or disengaging the teeth, element **46** or similar to pin, element **48** or similar. Unlocking elements are suggested, however, examples are not limited to specific elements to achieve the unlocking function.

The example shows sliding element(s) **22** and pivot element(s) **24** connect the height adjustment mechanism **14** to the work surface platform **10**. The example allows for the work surface platform to be raised and lowered, as well as locked into the desired position of the individual using the desktop workspace. This allows the user to utilize the desktop workspace that adjusts vertically while in a seated position or a standing position.

FIG. **8** portrays the current design of elements **40** and **42**, which could be used to elevate a monitor, laptop, or other items to a level higher than that of work surface platform **10**. Additionally raising a monitor can create a more comfortable and healthier work space for the operator by bringing their screen(s) to a position closer to eye level. FIG. **9** shows elements **40** and **42** sitting on work surface platform **10**. Elements **40** and **42** are presently designed to be able to sit anywhere on surface **10**. Examples are not intended to limit the design of elements **40** and **42**. Elements **40** and **42** are intended to represent a method in which a monitor(s) can be

8

elevated to height higher than if it were sitting on work surface platform **10**. It is to be understood that element **40** or **42** could be designed differently and still accomplish its function to raise the height of a monitor(s) or other items.

FIGS. **10**, and **10B** show an example of part of keyboard tray mechanism **50**, which provides a platform for the user to place items such as a keyboard, mouse, or other items on. Keyboard mechanism **50** is configured move to a position that is in an outward and lowered position with respect to surface **10**. Such a position can provide a more ergonomic location of the keyboard and mouse for the user. Some examples include a design where the keyboard tray can be removed, adjusted, or designed so that it extends out when is in use and is compactly stored under surface **10** when not in use.

FIGS. **10** and **10C** show an example of Keyboard tray **50** where it is configured to move underneath and flush with surface **10** to allow this disclosure to maintain its compact state once in a closed position. Bracket **52** connects to channel plate component **54**, which connects to bracket **56**, which connect to slider **58**, which connect to keyboard platform **60**. When the user applies an inward and upward force to platform **60**, channeled plate component **54** and slider **58** allow the keyboard tray mechanism to move to a position that is compactly positioned underneath platform **10** as portrayed in FIG. **10C**. Conversely, when an outward and downward force is applied to platform **10**, elements **52**, **54**, **56**, and **58** allow mechanism **50** to be in an out and down position as portrayed in FIGS. **1C** and **2C**. Said more specifically, plate **54** contains channels or grooves that guide brackets **52** and **54** connect to with pins, screws, or similar. When the user pulls or pushes up, down, in, or out on the platform **60**, the channels or grooves in plate **54** along with the sliding motion of slider **58** guide the platform to either rest in an outward state for typing or tucked away under the work surface platform **10**.

FIG. **10B** shows an example of keyboard tray mechanism **50** that attach to platform **10**. Bracket **62** attaches to platform **10** at element **64** and keyboard platform **60** at element **66**. Element **64** and **66** consists of a channel, bracket, or other means to attach bracket **62** to both platform **10** and platform **60**.

Elements for keyboard tray mechanism **50** are suggested, however, examples are not limited to specific elements to achieve the function of the keyboard tray mechanism.

The intention of the different examples discussed is not intended to limit the scope of this disclosure. The description and terminology is not intended to limit the scope and applicability of this disclosure. It should be understood that other terminology, parts, components, and layouts could be used that would still embody the intentions of this disclosure. Individuals skilled in the art will recognize that examples described have suitable alternatives. It is also noted that the examples are not limited to specific construction materials, and that various suitable materials exist for the elements of this disclosure.

What is claimed is:

**1**. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

US 12,318,003 B1

a first set of lift arms including a first arm rotatably connected to the base and a second arm rotatably connected to the work surface platform;

a second set of lift arms including a third arm rotatably connected to the base and a fourth arm rotatably connected to the work surface platform; and

an element that connects the first set of lift arms to the second set of lift arms such that the second set of lift arms operates in parallel to the first set of lift arms,

wherein the first set of lift arms and the second set of lift arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base; and

a gas spring attached between the work surface platform and the element to provide a force to assist in elevation of the work surface platform,

wherein the gas spring acts as a locking device that holds the work surface platform at various vertical heights above the base.

2. The desktop workspace of claim 1, wherein:

the first arm and the second arm connect at a first pivot point, and

the third arm and the fourth arm connect at a second pivot point.

3. The desktop workspace of claim 1, wherein the gas spring connects to the work surface platform via a work surface platform pivot fixed relative to an underside of the work surface platform.

4. The desktop workspace of claim 3, further comprising a bracket fixed to the underside of the work surface platform, wherein the gas spring connects to the work surface platform via the bracket fixed to the underside of the work surface platform with the work surface platform pivot between the gas spring and the bracket.

5. The desktop workspace of claim 1, wherein the first arm is rotatably connected to the base with a base pivot point, and wherein the second arm is rotatably connected to the work surface platform with a platform pivot point.

6. The desktop workspace of claim 5, wherein the first arm is rotatably connected to the work surface platform, and wherein the second arm is rotatably connected to the base.

7. The desktop workspace of claim 1, wherein the element connects the first arm to the third arm.

8. The desktop workspace of claim 1, wherein the gas spring is a first spring, the desktop workspace comprising a pair of springs attached to the work surface platform to assist in the elevation of the work surface platform, the pair of springs including the first spring and a second spring.

9. The desktop workspace of claim 1,

wherein the work surface platform forms an upper work surface, and

wherein the gas spring is completely covered by a profile of the work surface platform when viewed from above the upper work surface relative to the base, the profile of the work surface platform being defined by an outer perimeter of the upper work surface.

10. The desktop workspace of claim 1, further comprising a keyboard tray mechanism configured to hold the keyboard platform in the position that protrudes out, down, and parallel to the work surface platform and to allow the keyboard platform to be stored under the work surface platform.

11. The desktop workspace of claim 1, further comprising a work surface platform element sitting on the work surface platform, the work surface platform element including an elevated platform surface above the work surface platform.

12. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a first set of lift arms including a first arm rotatably connected to the base and a second arm rotatably connected to the work surface platform; and

a second set of lift arms including a third arm rotatably connected to the base and a fourth arm rotatably connected to the work surface platform,

wherein the first set of lift arms and the second set of lift arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base; and

a gas spring attached between the work surface platform and the height adjustment mechanism or a point of the base to provide a force to assist in elevation of the work surface platform,

wherein the first arm, the second arm, and the gas spring are positioned side-by-side when the desktop workspace is in a fully lowered position.

13. The desktop workspace of claim 12, further comprising an element that connects the first set of lift arms to the second set of lift arms.

14. The desktop workspace of claim 13, wherein the gas spring is attached to the element.

15. The desktop workspace of claim 12, wherein the gas spring is attached to at least one of the first arm and the second arm via an arm pivot point.

16. The desktop workspace of claim 12, wherein the gas spring acts as a locking device that holds the work surface platform at various vertical heights above the base.

17. The desktop workspace of claim 12, further comprising a locking device that holds the work surface platform at various vertical heights above the base.

18. The desktop workspace of claim 17, wherein the locking device applies pressure to prevent the first set of lift arms from moving.

19. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a first set of lift arms including a first arm rotatably connected to the base and a second arm rotatably connected to the work surface platform;

a second set of lift arms including a third arm rotatably connected to the base and a fourth arm rotatably connected to the work surface platform; and

US 12,318,003 B1

11

an element that connects the first set of lift arms to the second set of lift arms such that the second set of lift arms operates in parallel to the first set of lift arms,

wherein the first set of lift arms and the second set of lift arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base;

a spring attached between the work surface platform and the element to provide a force to assist in elevation of the work surface platform; and

a locking device that holds the work surface platform at various vertical heights above the base,

wherein the locking device includes a handle that disengages the locking device once pressure is applied by a user.

**20**. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a set of pivot arms;

a base pivot point fixed relative to the base connecting the set of pivot arms to the base; and

a platform pivot point fixed relative to the work surface platform and connecting the set of pivot arms,

wherein the set of pivot arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base; and

a gas spring attached between the work surface platform and a point of the base to provide a force to assist in elevation of the work surface platform,

wherein the gas spring extends between the work surface platform and the point of the base,

wherein the gas spring acts as a locking device that holds the work surface platform at various vertical heights above the base.

**21**. The desktop workspace of claim **20**, wherein the set of pivot arms includes:

a first pivot arm pivotably connected to the base;

a second pivot arm pivotably connected to the first pivot arm and the work surface platform;

a third pivot arm pivotably connected to the base; and

a fourth pivot arm pivotably connected to the third pivot arm and the work surface platform.

**22**. The desktop workspace of claim **20**, wherein the gas spring connects to the work surface platform via a work surface platform pivot fixed relative to an underside of the work surface platform.

**23**. The desktop workspace of claim **20**,

wherein the work surface platform forms an upper work surface, and

wherein the gas spring is completely covered by a profile of the work surface platform when viewed from above

12

the upper work surface relative to the base, the profile of the work surface platform being defined by an outer perimeter of the upper work surface.

**24**. The desktop workspace of claim **20**, further comprising a keyboard tray mechanism configured to hold the keyboard platform in the position that protrudes out, down, and parallel to the work surface platform and to allow the keyboard platform to be stored under the work surface platform.

**25**. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a set of pivot arms;

a base pivot point fixed relative to the base connecting the set of pivot arms to the base; and

a platform pivot point fixed relative to the work surface platform and connecting the set of pivot arms,

wherein the set of pivot arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base,

wherein the set of pivot arms includes:

a first pivot arm pivotably connected to the base:

a second pivot arm pivotably connected to the first pivot arm and the work surface platform;

a third pivot arm pivotably connected to the base; and

a fourth pivot arm pivotably connected to the third pivot arm and the work surface platform:

a gas spring attached between the work surface platform and the height adjustment mechanism or a point of the base to provide a force to assist in elevation of the work surface platform,

wherein the gas spring acts as a locking device that holds the work surface platform at various vertical heights above the base; and

an element extending between the first pivot arm and the third pivot arm.

**26**. The desktop workspace of claim **25**, wherein the gas spring extends between the work surface platform and the height adjustment mechanism.

**27**. The desktop workspace of claim **25**, wherein the gas spring extends between the work surface platform and the point of the base.

**28**. A desktop workspace that adjusts vertically, comprising:

a work surface platform;

a keyboard platform that protrudes out, down, and parallel to the work surface platform;

a base configured to sit on an existing platform;

a height adjustment mechanism connecting the work surface platform and the base, the height adjustment mechanism including:

a set of pivot arms;

a base pivot point fixed relative to the base connecting the set of pivot arms to the base; and

US 12,318,003 B1

13              14

a platform pivot point fixed relative to the work surface platform and connecting the set of pivot arms,

wherein the set of pivot arms move to create a lifting motion when raising and lowering the work surface platform to various heights,

wherein the lifting motion when raising and lowering the work surface platform to various heights of the height adjustment mechanism moves the work surface platform in a straight vertical direction relative to the base;

a spring attached between the work surface platform and the height adjustment mechanism or a point of the base to provide a force to assist in elevation of the work surface platform; and

a locking device that holds the work surface platform at various vertical heights above the base,

wherein the locking device includes a handle that disengages the locking device once pressure is applied by a user.

**29**. The desktop workspace of claim **28**, wherein the spring extends between the work surface platform and the height adjustment mechanism.

**30**. The desktop workspace of claim **28**, wherein the spring extends between the work surface platform and the point of the base.

\*   \*   \*   \*   \*

# EXHIBIT B

 Outlook

---

## RE:[CASE 17897997911] Notice: Amazon Patent Evaluation Express Program - Action Required

---

**发件人** patent-evaluation@amazon.com <patent-evaluation@amazon.com>
**日期** 周四 2025-06-12 22:07
**收件人** BestqiUS2023@outlook.com <BestqiUS2023@outlook.com>

📎 2 个附件(3 MB)
Amazon Patent Evaluation Express Procedure.pdf; CKnapp Sales Executed Agreement.pdf;

Hello,

We received a report from a patent owner who believes the items listed at the end of this email infringe their U.S. Patent No. 12,318,003.

If you wish to continue selling the items listed at the end of the email, you have two choices.

First, you can choose to resolve your claim with the patent owner directly within the next three weeks. If we receive a retraction from the patent owner within the next three weeks, we will allow you to continue selling the items listed at the end of this email. The patent owner's contact information is as follows:

CKnapp Sales, Inc.
rphelan@marshallip.com
Cknapp Sales, Inc, 195 E Martin Dr, Goodfield, IL 61742, US

If the patent owner agrees to retract their complaint, they must send the retraction directly to us at patent-evaluation@amazon.com. Forwarded retractions will not be accepted. Another option is to resolve the claim with the patent owner in a federal district court case. If you are already engaged in a patent lawsuit with the patent owner, or if you file a lawsuit against the patent owner for declaratory judgment of non-infringement of the asserted patent, please provide us with a copy of the relevant complaint within the next three weeks, and you may continue selling the items listed at the end of the email while the lawsuit proceeds.

Second, you can choose to participate in neutral evaluation of the patent owner's claim. Amazon's neutral evaluation procedure is described in the attached document titled "Amazon Patent Evaluation Express Procedure." Please read this document carefully and note that payment of a deposit is required. If you choose to participate in the neutral evaluation, you must agree to the attached Amazon Patent Evaluation Express Agreement, complete Exhibit 2 of the Agreement, "Seller-Supplied Information," and return the completed Agreement to patent-evaluation@amazon.com within three weeks.

Please note that participation in the evaluation process does not guarantee that you will be able to continue to sell the items listed at the end of this email following the evaluation. If the evaluator decides that the items likely infringe, we intend to remove them from Amazon.com. If, however, the evaluator decides the items likely do not infringe, we will not remove your listings from Amazon.com, and your deposit may be refunded in part or in full.

If you do not either resolve your claim with the patent owner directly, or agree to participate in the neutral evaluation process, we will remove the listings at the end of this email along with any materially identical variants from Amazon.com.

To learn more about this policy, search for "Intellectual Property Violations" in Seller Central Help.

ASIN: B0D9LZC7MB
B0D9LZV2N7
Infringement type: Patent
Patent Number: 12,318,003
Case ID: 17897997911

You can learn more about your account health in the Performance section of Seller Central (https://apac01.safelinks.protection.outlook.com/?url=https%3A%2F%2Fsellercentral.amazon.com%2Fgp%2Fseller-rating%2Fpages%2Fperformance-summary.html&data=05%7C02%7C%7C3d11df4b03994fbe7a1d08dda9ba2466%7C84df9e7fe9f640afb435aaaaaaaaaaaa%7C1%7C0%7C638853340561238036%7CUnknown%7CTWFpbGZsb3d8eyJFbXB0eU1hcGkiOnRydWUsIlYiOiIwLjAuMDAwMCIsIlAiOiJXaW4zMiIsIkFOIjoiTWFpbCIsIldUIjoyfQ%3D%3D%7C0%7C%7C%7C&sdata=wbKMuIKtzDX02poHzOBbVa8kZ6bsejUfkQmJW8jtwYs%3D&reserved=0).

Neutral Patent Evaluation Team
Amazon.com

--